**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                      :
DOROTHY DEITZ,                        :
                                      :
        Plaintiff,                    :          Civil No. 06-5053 (JAP)
                                      :
        v.                            :          **OPINION**
                                      :
MICHAEL J. ASTRUE,                    :
Commissioner of Social Security,      :
                                      :
        Defendant.                    :
_____:

APPEARANCES:

Cary L. Winslow, Esq.
Legal Services of New Jersey
100 Metroplex Drive at Plainfield Avenue
Edison, New Jersey 08817
        *Attorney for Plaintiff, Dorothy Deitz*

Christopher J. Christie, Esq.
United States Attorney
Sheena V. Barr, Esq.
Special Assistant United States Attorney
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278-0004
        *Attorneys for Defendant, Michael J. Astrue*

PISANO, District Judge:

        Before the Court an appeal by Dorothy Deitz ("Plaintiff") from the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her request for

Supplemental Security Income ("SSI").  The Court has jurisdiction to review this matter under 42

U.S.C. §§ 405(g) and 1383(c)(3) and decides this matter without oral argument. *See* Fed. R. Civ. P. 78. For the reasons set forth herein, the Court vacates the Commissioner's final administrative decision and remands this matter to the Commissioner for further proceedings consistent with this Opinion.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Income ("SSI") benefits on October 29, 2003 alleging she was disabled due to anorexia and Stage III ovarian cancer. Plaintiff's applications were denied initially and also upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on December 22, 2005, and the ALJ issued his decision on January 27, 2006, finding that Plaintiff was capable of performing work existing in significant numbers and, therefore, was not disabled within the meaning of the Social Security Act. The Appeals Council denied review of the decision by notice dated August 18, 2006.

Thereafter, Plaintiff filed her complaint in this matter alleging that the ALJ's decision is not based on substantial evidence. Specifically, Plaintiff argues that the ALJ's finding at step five of the requisite five-step analysis was not supported by substantial evidence because the hypothetical question that the posed to the vocational expert was defective. As to relief, Plaintiff seeks reversal of the Commissioner's Order denying benefits.

## II. BACKGROUND

A. Plaintiff's Personal Background and Work History

Plaintiff was born on July 5, 1954 and lives in Clinton, New Jersey with her disabled teenage son. She also has an adult daughter. Plaintiff holds a bachelor's degree in music and

theater.  Plaintiff has limited work experience as a secretary, waitress, receptionist and sales

clerk, but has not worked in over 20 years.  The ALJ found that she has no past relevant work.

R. 20.

B.  Plaintiff's Medical History

1.  Cancer

        Approximately ten years ago, Plaintiff was diagnosed with Stage III ovarian cancer.

Surgery was performed.  She underwent exploratory laparotomy and a total abdominal

hysterectomy and bilateral salpingoopherectomy and tumor debulking.  Her doctor recommended

five to six months of chemotherapy and other postoperative treatment, but, according to her

doctor, Plaintiff never received this treatment "due to extensive family problems, and an inability

to arrange her schedule to make it possible for her to receive this treatment."  R. 133.  Plaintiff's

cancer appears to be in remission.  *Id.*

2.  Eating Disorders

        Plaintiff has a history of anorexia nervosa and bulimia nervosa.  According to Dr.

Stephanie Haymaker, who examined Plaintiff at the Commissioner's request on April 1, 2004,

both of these conditions are in remission.  R. 177.

3.  Depression and Anxiety

        Plaintiff was seen by psychology extern Catherine Yeager (as supervised by Dr. Lee

Hyer) at the University of Medicine and Dentistry of New Jersey for a psychological evaluation

on August 13 and October 7, 2003.  Ms. Yeager diagnosed Post-Traumatic stress disorder as a

"reasonable umbrella category under which [Plaintiff's] depressive, anxiety, panic and somatic

symptoms could be better understood."  R. 174.  Individual and group therapy was

3

recommended.

Dr. Stephanie Haymaker reviewed Ms. Yeager's report and also examined Plaintiff, diagnosed Plaintiff as suffering from depressive disorder, NOS (provisional diagnosis) and generalized anxiety disorder with panic attacks (provisional diagnosis). R. 177. As stated earlier, Dr. Haymaker also noted that Plaintiff's anorexia and bulimia were in remission. *Id.*

A Psychiatric Review Technique ("PRT") dated April 14, 2004, conducted by agency consultants Patricia A. Farrell, Ph.D, and Zenaida Mata, M.D., reported that Plaintiff suffered from depressive disorder, NOS, and, as a result, had mild limitations in activities of daily living and maintaining social functioning. The PRT also reported that Plaintiff had moderate limitation in maintaining concentration, persistence or pace. The accompanying Mental Residual Functional Capacity Assessment ("MRFCA") dated April 14, 2004, found that Plaintiff was not significantly limited in the ability to understand, remember and carry out detailed instructions, as well as in her ability to maintain attention and concentration for extended periods. However, these consultants found that Plaintiff was moderately limited in her "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," as well as "her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods." R. 192-93.

4. Other Conditions

In a report dated August 26, 2002, Dr. C. Antonia Mattei,[1] Plaintiff's current treating

---

[1]This report was actually prepared and executed by "K. Briant for C. Antonia Mattei." R. 168.

physician, reports "Physical Findings" and "Impairment and/or Limitations" of "progressive

weakness – unable to work."  R. 167-68.  As far as a diagnosis, the report notes only a past

history of ovarian cancer, and otherwise states a diagnosis is "unknown – contact Dr. Stephanie

King, oncologist."  *Id.*

On April 30, 2004, Plaintiff was examined by Dr. Sabahat Bokhari, M.D.  R. 197.  He

reported that Plaintiff complained of lower left pain, constipation and fecal impaction.  He also

noted her history of anorexia and bulimia.  Dr. Bokhari's physical examination showed that

Plaintiff was not in acute distress but had lower left quadrant tenderness.  There were no palpable

masses.  Plaintiff had a normal gait, full range of motion in all joints, normal fine and gross

manipulations, normal grip strength and did not use any assistive device for ambulation.  R. 198

## III.  LEGAL STANDARD FOR DISABILITY BENEFITS

### A.  Disability Defined

To be eligible for SSI benefits, a claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months."  42 U.S.C. § 1382(a)(3)(A).  A

person is disabled for these purposes only if his physical and mental impairments are "of such

severity that he is not only unable to do his previous work, but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy…"  42 U.S.C. § 1382c(a)(3)(A).

### B.  The Five-Step Analysis for Determining Disability

Social Security regulations set forth a five-step, sequential evaluation procedure to

5

determine whether a claimant is disabled.  20 C.F.R. § 416.920.  For the first two steps, the claimant must establish (1) that he has not engaged in "substantial gainful activity" since the onset of his alleged disability, and (2) that he suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 416.920(b)-©.  Given that the claimant bears the burden of establishing these first two requirements, his failure to meet this burden automatically results in a denial of benefits, and the court's inquiry necessarily ends there.  *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n. 5 (1987) (delineating the burdens of proof at each step of the disability determination).

If the claimant satisfies his initial burdens, he must provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments").  20 C.F.R. § 416.920(d).  Upon such a showing, he is presumed to be disabled and is automatically entitled to disability benefits.  *Id*.  If he cannot so demonstrate, the benefit eligibility analysis requires further scrutiny.

The fourth step of the analysis focuses on whether the claimant's residual functional capacity ("RFC") sufficiently permits him to resume his past relevant work.  20 C.F.R. § 416.920(e)-(f).  Again, the burden lies with the claimant to show that he is unable to perform his past work.  *Fargnoli v. Halter*, 247 F.3d 34, 39 (3d Cir. 2001).  If the claimant is found to be capable to return to his previous line of work, then he is not "disabled" and not entitled to disability benefits.  *Id*.  Should the claimant be unable to return to his previous work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial, gainful work.  20 C.F.R. § 416.920(g); *Kangas v. Bowen*, 823 F.2d

775, 777 (3d Cir. 1987).  If the Commissioner cannot satisfy this burden, the claimant is

"disabled" and will receive social security benefits.  *Yuckert*, 482 U.S. at 146-47 n.5.

C.  The Record Must Provide Objective Medical Evidence

Under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* and 42 U.S.C.

§ 1381 *et seq.*, a claimant is required to provide objective medical evidence in order to prove his

disability.  42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a

disability unless he furnishes such medical and other evidence of the existence thereof as the

Commissioner of Social Security may require."); 42 U.S.C. § 1382c(H)(I) ("In making

determinations with respect to disability under this subchapter, the provisions of section[] . . .

423(d)(5) of this title shall apply in the same manner as they apply to determinations of disability

under subchapter II of this chapter.").  Accordingly, a plaintiff cannot prove that he is disabled

based solely on his subjective complaints of pain and other symptoms.  *See Green v. Schweiker*,

749 F.2d 1066, 1069-70 (3d Cir. 1984) ("[S]ubjective complaints of pain, without more, do not

in themselves *constitute* disability.").  He must provide medical findings that show that he has a

medically determinable impairment.  *See id.*; *see also* 42 U.S.C. § 423(d)(1)(A) (defining

"disability" as an "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment"); 42 U.S.C. § 1382c(a)(3)(A) (defining a

disabled person as one who is "unable to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment").

Furthermore, a claimant's symptoms, "such as pain, fatigue, shortness of breath,

weakness, or nervousness, will not be found to affect [one's] ability to do basic work activities

unless medical signs or laboratory findings show that a medically determinable impairment(s) is

present."  20 C.F.R. § 416.929(b); *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999)

7

(rejecting claimant's argument that the ALJ failed to consider his subjective symptoms when the ALJ had made findings that his subjective symptoms were inconsistent with objective medical evidence and the claimant's hearing testimony); *Williams*, 970 F.2d at 1186 (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work).

## IV.  STANDARD OF REVIEW

_____The district court is vested with "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Section 405(g) of the Act additionally provides that "the findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive…"  42 U.S.C. § 1383(c)(3); *see also Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied sub nom. Williams v. Shalala*, 507 U.S. 924 (1993); *Stunkard v. Secretary of Health & Human Serv.*, 841 F.2d 57, 69 (3d. Cir. 1988).  Accordingly, a reviewing court *must* uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  *Williams*, 970 F.2d at 1178 (emphasis added).

"Substantial evidence" means more than "a mere scintilla."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  The inquiry is not whether the reviewing court would have made the same determination, but rather whether the Commissioner's conclusion was reasonable. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Thus, substantial evidence may be slightly less than a preponderance.  *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).  Some types of evidence will not be "substantial."  For example,

8

[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

While a reviewing court shall give deference to administrative decisions, *see Schaudeck v. Commissioner*, 181 F.3d 429, 431 (3d Cir. 1999), its "substantial evidence" review cannot be fairly conducted without some indication that the ALJ has evaluated all the relevant evidence. *Cotter v. Harris*, 642 F.2d 700, 705-06 (3d Cir. 1981). Therefore, an administrative decision should provide a "clear and satisfactory explanation of the basis on which it rests." *Id.* at 704. When the record shows conflicting evidence, the ALJ "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987). For instance, when an ALJ decides that a social security claimant is capable of working, the ALJ must consider all evidence and explain the weight given to probative exhibits. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978).

Moreover, the reviewing court does have a duty to review the entire record to determine whether the ALJ's findings are rational and supported by substantial evidence. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.'" *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988) (internal citation omitted). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent

evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*,

786 F.2d 581 (3d Cir. 1986)).  As the Third Circuit has held, access to the Commissioner's

reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained
> the weight he has given to obviously probative exhibits, to say that his decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ.*

*& Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)).  Nevertheless, the district court is not

"empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."

*Williams*, 970 F.2d at 1182 (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).

## V.  DISCUSSION

### A.  The ALJ's Decision

In his decision ℝ. 16-21), the ALJ properly applied the requisite sequential evaluation

and considered all relevant evidence put before him.  The decision includes evaluation of

Plaintiff's subjective complaints as well as the various medical reports related to her medical

conditions.

At step one of the sequential evaluation, the ALJ determined that Plaintiff had not

engaged in any substantial gainful activity since June 1997.  At step two, the ALJ concluded that

the evidence established the existence of "severe" impairments, specifically, depressive disorder

and anxiety disorder.  Although the ALJ found Plaintiff's impairments to be severe, the ALJ

found at step three that Plaintiff did "not have an impairment or combination of impairments that

meets or medically equals one of the listed impairments in 20 CFR. 404, Subpart P, Appendix 1,

Regulations No. 4."  R. 18.  Specifically, the ALJ found that

> As evaluated under sections 12.04 and 12.06 the claimant presents minimal restrictions in activities of daily living.  She is the primary caregiver of her 12-year old son who because of congenital renal failure has required multiple surgeries.  She is able to shop, manage her finances, do household chores, and is able to drive.  She presents no difficulties in maintaining appropriate social interaction.  There are no signs of social withdrawal or isolation, and she is able to maintain and sustain relationships.  The claimant presents moderate difficulties in maintaining concentration and task persistence.  Nonetheless, she can perform a wide variety of daily activities despite the stress of taking care of her infirmed son, which shows that at the very least she would be able to function in a low stress environment performing routine job tasks.  There is no evidence that the claimant has experienced any decompensations.

R. 18.

At step four, the ALJ concluded that Plaintiff had the residual functional capacity to perform entry level, low stress light work[2] that involved simple and routine job instructions.  In reaching this conclusion, the ALJ evaluated the medical evidence and also considered Plaintiff's subjective complaints of disabling pain and other symptoms and limitations.  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms that Plaintiff alleged, but further found that Plaintiff's complaints about the intensity, duration and limiting effects of those symptoms were not entirely credible.  In particular, the ALJ

---

[2]20 C.F.R. § 416.967(b) provides in relevant part:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are some additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

pointed to psychological examinations in 2003 that noted that Plaintiff had been able to meet the basic needs of her children and herself, but the demands placed on her by her son's chronic illness made it impossible for her to seek employment.  The ALJ concluded that this report suggested that "were it not for her responsibilities as a caregiver for her son, [Plaintiff] would be able to work."  R. 19.

Additionally, an exam in 2004 established that despite Plaintiff's alleged symptoms of anxiety and depression, "the claimant's thought process was logical and goal oriented, memory was intact, and she was fully oriented," although her "judgment and insight were limited and she had problems with concentration."  R. 19.  The ALJ concluded that, although Plaintiff had some problems with concentration, she is "fully capable of performing simple, routine, low stress work, as Plaintiff could perform a variety of daily activities while caring for her disabled son." R. 18, 19.

The ALJ further found that Plaintiff's allegation that she is too physically weak to work was contradicted by the consultative internist evaluation done in 2004.  The ALJ noted that this evaluation revealed that Plaintiff has a normal gait, full range of motion of all joints, normal grip strength, no neurological focal deficits and no sensory or motor deficits.  Plaintiff maintains a normal weight, and is neither receiving treatment for any physical condition nor is taking any medication.

Similarly, the ALJ found that Plaintiff's subjective claims were also not supported by her daily activities.  He noted that Plaintiff is able to take care of her personal needs and those of her infirm son, and is able to perform a wide variety of daily activities.  The record does reflect that Plaintiff cares for her disabled young son, administers his medication, supervises him "in the

doing of his chores, educational work, and things necessitated by his medical condition in order to maintain his health." R. 84-87; 89-90. Around the house, either by herself or at times with help from others, Plaintiff does laundry, shops or does other essential errands, prepares meals for her son, prepares her own special diet which involves extensive preparation, does dishes, does "some tidying," gardens, takes care of her household finances, drives short distances and interacts with friends. *Id.* The ALJ ultimately concluded there was no evidence of physical impairment. Nevertheless, the ALJ stated that he gave Plaintiff "the full benefit of the doubt" and concluded that Plaintiff only could perform the demands of "light work," *see* 20 C.F.R. § 404.1567(b), but nevertheless would be limited to entry level, low stress light work that involved simple and routine job instructions. R. 20.

Concluding that Plaintiff had no past relevant work experience, the ALJ's analysis proceeded to step five, where the burden shifted to the Social Security Administration to show that there were other jobs existing in the national economy that Plaintiff could perform. Because the ALJ determined that Plaintiff was not capable of performing the full range of light work, a vocational expert ("VE") was called upon to assist in determining whether there were a significant number of jobs in the national economy that Plaintiff was capable of performing. The expert was asked by the ALJ to consider whether jobs exist in the national economy for an individual of Plaintiff's age, education, work experience, and residual functional capacity. The VE testified that given all the factors presented by the ALJ, such an individual would be able to perform the jobs of garment sorter and small product assembler, which are jobs existing in significant numbers in the national economy. Based in large part on the VE's testimony, the ALJ concluded that Plaintiff was capable of performing such work and, therefore, was not disabled

under the Social Security Act.

B.  Hypothetical Presented to Vocational Expert

        In arguing that the Commissioner's decision is not supported by the substantial evidence, Plaintiff challenges the ALJ's analysis at step five of the evaluation.  Specifically, Plaintiff argues that the hypothetical presented by the ALJ and relied upon by the VE was defective in the following three ways: (1) it failed to adequately account for the Plaintiff's limitations in "concentration, persistence, or pace;" (2) it erroneously defined "low stress" in terms of the average person rather than in terms of Plaintiff; and (3) it failed to adequately consider that Plaintiff's depression physically affects her ability to perform work.

        At the hearing, the ALJ posed the following hypothetical to the VE:

> [A]ssume it's founded, despite the difficulties that she has, the mental health difficulties including the eating disorder, difficulties in her present state and that her general size, assume that it's found that she retains the residual functional capacity to do work activity that is not greater than the light exertional level.  But that the activities should be entry level, not complex tasks but simple tasks.  Not complex instructions but simple instructions.  Low stress as far as the job and, of course, that's a difficult term.  It means different things to different people.  And we would be concerned, our concern was stresses that would impact on this lady.  And there's some commentary in the medical documents to that affect [sic].  But in identifying jobs I'm asking you to identify the jobs which, in your experience and education, would be considered low stress in the vocational literature as opposed to perhaps medium or high stress as the possible alternative jobs.  Using the center Clinton or Phelpsberg [sic], Easton as the center geographically of the existence of local jobs but also considering jobs that, that would exist nationally.  What types of jobs, if any, would you identify?

R. 232.  In response, the VE identified the jobs of garment sorter and small product assembler.

        Plaintiff first argues that this hypothetical question fails to reflect Plaintiff's impairments as to "concentration, persistence, or pace."  The law in this Circuit regarding such hypothetical questions is clear.  "If . . . an ALJ poses a hypothetical question to a VE that fails to reflect 'all of

14

the claimant's impairments that are supported by the record ... [the ALJ's findings in response to, and in reliance on, the VE's testimony] cannot be considered substantial evidence.'" *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004) (quoting *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir.1987)). "While the ALJ may proffer a variety of assumptions to the expert, the VE's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984). Because the hypothetical question "must reflect all of a claimant's impairments," *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir.2002), "the ALJ must accurately convey to the VE *all* of a claimant's credibly established limitations[,]" *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (emphasis supplied).

In the present case, the ALJ found that Plaintiff presented "moderate difficulties in maintaining concentration and task persistence." R. 18; *see* Psychiatric Review Technique at R. 189. The ALJ found, however, that despite these difficulties, the record shows that neither Plaintiff's depression nor anxiety "preclude her from taking care of her personal needs and those of her infirmed son" and, despite receiving help at times, she can "perform a wide variety of daily activities." *Id.* Therefore, the ALJ concluded that although Plaintiff "may have some problems with concentration, as pointed out by the consultative examiner, this would not preclude all work activity, as she is fully capable of performing simple, routine, low stress work." R. 20.

The ALJ's opinion, however, is unclear as to what extent the ALJ considered Plaintiff's moderate limitations reported in the MRFCA in her "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," as well as

15

"her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods."  R. 192-93.  Here, the ALJ only posed in the hypothetical Plaintiff's limitations of performing "simple tasks," at entry level with "simple instructions."

In the case relied upon by Plaintiff, *Ramirez v. Barnhart*, *supra*, the Third Circuit found that a hypothetical presented to a VE that required that a job be limited to "one to two step tasks" did not adequately encompass a finding that the claimant "often" had "deficiencies in concentration, persistence, or pace."  *Ramirez*, 372 F.3d at 554.  The court found that the limitation of performing only "one to two step tasks" did not take into account deficiencies in pace, as many jobs require a certain level of output from the employee.  *Id.*

The case presented here is similar to the facts presented in *Ramirez*.  The ALJ's hypothetical question including Plaintiff's limitation of performing simple tasks did not encompass Plaintiff's limitations as to concentration, persistence, and pace as found in the MRFCA.  As reasoned by the *Ramirez* Court, "[m]any employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time."  *Id.*  Had the ALJ included in the hypothetical question Plaintiff's limitations as to concentration, persistence, and pace, the VE may have changed his answer as to whether jobs existed in the national economy that Plaintiff could perform.  Significantly, the fact that the jobs identified by the VE here—that is, garment sorter and small product assembler—would require daily production quotas indicates that these jobs would require Plaintiff to maintain a certain level of concentration and pace.  *See id.*  The ALJ's hypothetical failed to encapsulate this requirement.

16

The Court further emphasizes that, at step five, the Commissioner bears the burden of proof that the claimant can perform a job existing in the national economy.  For those reasons, the Court holds that the ALJ's hypothetical did not adequately capture *all* of Plaintiff's limitations by failing to recite her limitations in concentration, persistence, and pace.

Notwithstanding that conclusion, the Court nevertheless considers Plaintiff's other arguments challenging the ALJ's hypothetical.  Plaintiff next argues that the ALJ's hypothetical to the VE was inadequate because it defines "low stress" in terms of the average person rather than in terms of Plaintiff.  In support of this argument, Plaintiff relies on *Lancellotta v. Secretary of Health and Human Svcs.*, 806 F.2d 284 (1st Cir. 1986), in which the court observed that "stress is not a characteristic of a job, but instead reflects an individual's subjective response to a particular situation."  Citing Social Security Ruling ("SSR") 85-15,[3] the court in *Lancellotta* held that the Commissioner must make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect her ability to work.  *Id.* at 285.

In *Lancellotta*, three physicians determined that the claimant was "totally incapacitated as a result of anxiety."  *Id.*  There was evidence in that case indicating that the claimant experienced dizziness, ringing in his ears, severe anxiety, fatigue, stomach distress, shortness of breath, and ventricular irregularity, feared going outside, and was incapable of driving.  Unlike the claimant in *Lancellotta*, however, Plaintiff has not presented evidence that she was incapacitated by her anxiety.  To the contrary, the record here reflects that Plaintiff may suffer stress headaches

---

[3]SSR 85-15 instructs that "[t]he reaction to the demands of work (stress) is highly individualized," and that mentally impaired individuals "may have difficulty meeting the requirements of even so-called 'low-stress' jobs," and that "[a]ny impairment-related limitations created by an individual's response to demands of work ... must be reflected in the RFC assessment." 1985 WL 56857, at *6.

occasionally and that she appears "apt to deteriorate in the work setting under stressful circumstances," R. 176-77, but not that she is incapacitated in any way.  Further, the record shows that Plaintiff is not significantly limited or has no limitations in basic work-related activities, namely, her ability to understand, remember and carry out instructions, interact with the general public, respond appropriately to criticism from supervisors and get along with coworkers.  R. 193.

Finally, the ALJ's limitation in the hypothetical to "low stress" jobs appears to be based more on the ALJ simply giving Plaintiff the benefit of the doubt rather than an actual finding of disabling anxiety in the record.  Indeed, the ALJ found that Plaintiff is able to perform a variety of daily activities despite the stress of caring for her disabled son, and, therefore, concluded that "*at the very least*, [Plaintiff] would be [able] to function in a low stress environment."  R. 18 (emphasis added).  The Court, therefore, finds no deficiency in the ALJ's questioning of the VE with respect to low stress jobs.

Last, Plaintiff asserts that the ALJ's hypothetical fails to adequately consider that Plaintiff's depression physically affects her ability to perform work.  She points out that decreased energy is a recognized symptom of depression, *see* 20 CFR. 404, Subpart P, Appendix 1, Listing 12.04A, and argues that she is "unrelentingly weary."  Although Plaintiff focuses her argument in this regard on the adequacy of the hypothetical question, in actuality, Plaintiff is challenging the ALJ's RFC assessment and the conclusion that Plaintiff can perform light work.[4]

_____

[4]There are two main methods by which a claimant may challenge an ALJ's hypothetical question: (1) by arguing that the hypothetical question failed to include limitations that the ALJ identified in the RFC assessment, or (2) by arguing that the ALJ "failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert."  See *Rutherford*, 399 F.3d at 554 n.8.  Plaintiff's argument here falls under

Therefore, the question for the Court is whether the RFC assessment that Plaintiff can perform light work is supported by the substantial evidence.

In support of her argument, Plaintiff cites SSR 85-15 , which provides that "[m]ental impairments are generally considered nonexertional, but depressions and conversion disorders may limit exertion." Plaintiff also points to the consultative examination that describes her as a "pale, fragile appearing" woman who "looks depressed and overwhelmingly fatigued." R. 173. Another examiner reported that Plaintiff complained of "general weakness." R. 177. Last, although a report prepared by Plaintiff's physician baldly stated that Plaintiff could not work because of "progressive weakness," this finding is completely unsupported by any diagnosis or other criteria.

The ALJ based his RFC assessment of light work on the consultative internist evaluation done in May 2004 by Dr. Bokhari, who reported that Plaintiff had a normal gait, full range of motion in all joints, normal fine and gross manipulations, normal grip strength, no neurological focal deficits and no sensory or motor deficits. R. 198. Furthermore, the wide range of daily activities in which Plaintiff engages lends further support to the ALJ's finding that Plaintiff is capable of performing light work. The Court, thus, finds that the RFC assessment that Plaintiff can perform light work is supported by substantial evidence.

Ultimately, the Court holds that the ALJ properly defined "low stress" in his hypothetical question posed to the VE and that the ALJ's finding that Plaintiff can perform light work is supported by substantial evidence in the record. Nevertheless, the Court also holds that the ALJ failed to pose a hypothetical question reflecting all of Plaintiff's limitations, including her

the second category and is essentially a challenge to the RFC assessment itself.

limitations in concentration, persistence, and pace.  Accordingly, the Court follows the

"numerous courts in [the Third Circuit that] have held [that] an ALJ's failure to include moderate

limitations involving concentration, persistence, or pace[] constitutes error warranting remand[,]"

*Davis v. Astrue*, 2007 WL 2248830, *4 (E.D. Pa. July 30, 2007), and now holds that the ALJ's

failure to include those limitations mandate a remand.

## VI.  CONCLUSION

For the foregoing reasons, the Court vacates the final administrative decision and

remands this case to the Commissioner for further proceedings consistent with this Opinion.  An

appropriate Order accompanies this Opinion.


                                                            /s/ Joel A. Pisano
_____                JOEL A. PISANO, U.S.D.J.
Date: February 29, 2008